**IMPORTANT NOTICE:** Courtesy copies of documents you file should **NOT** be provided to any judge. All communications with the court SHALL **ONLY** be through documents filed with the Clerk of Court.

RECEIVED
IN ALEXANDRIA, LA

MAY 11 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MELVIN WILLIAMS | CRIMINAL ACTION |
|       Petitioner | NO. 1:06-10017 |
| VERSUS | |
| | |
| UNITED STATES OF AMERICA | JUDGE DEE D. DRELL |
|       Respondent | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

This matter was referred to the undersigned Magistrate Judge for report and recommendation.

### Statement of the Claim

Before the court is a motion to vacate, set aside or correct sentence filed by pro se petitioner, Melvin Williams ("Williams"), on October 5, 2009 pursuant to 28 U.S.C. §2255 (Doc. Item 65). Williams attacks the validity of his 2007 conviction by a jury in the United States District Court for the Western District of Louisiana, Alexandria Division for assault of a government employee under 18 U.S.C. §111. Williams was sentenced to 150 months imprisonment which was to run consecutively to any other sentence he was serving. Payment of a $100 criminal victim fund assessment and interest thereon was waived by the court (Doc. Item 49).

Williams filed an appeal with the United States Court of Appeals for the Fifth Circuit (Court of Appeals Docket Number 07-

30179) challenging the sufficiency of the evidence to sustain his sentence as well as the enhancement of the sentence pursuant to provisions of the United States Sentencing Guidelines.  In a written opinion dated March 7, 2008, the Fifth Circuit affirmed Williams' conviction and sentence (Doc. Item 60).  Williams then filed a petition for a writ of certiorari with the United States Supreme Court which it denied on October 6, 2008.

Williams then filed the instant petition raising issues of: (1) whether he was denied effective assistance of counsel at both trial and the appellate level; (2) whether the government failed to disclose favorable evidence; and (3) whether errors by the District Court deprived Williams of his Fifth and/or Sixth Amendment rights.

### Rule 8(a) Resolution

This court is able to resolve the merits of this Section 2255 application without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner, and the court records provide the required and adequate factual basis necessary to the resolution of the Section 2255 application.  U.S. v. Green, 882 F.2d. 999, 1008 (5th Cir. 1989); Section 2255 Rule 8(a).

### Law of §2255

There are four grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) the sentence was

2

imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or, (4) the sentence is "otherwise subject to collateral attack". 28 U.S.C. §2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir. 1992), cert. denied 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992).  The scope of relief under Section 2255 is consistent with that of the writ of habeas corpus.  Cates, 952 F.2d at 151.  Also, U.S. v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. §2255 is reserved for the transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal but were not, may not be asserted in a collateral proceeding.  U.S. v. Vaughn, 955 F2d 367, 368 (5th Cir. 1992). Also, U.S. v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995).  A collateral challenge may not do service for an appeal.  After conviction and exhaustion and waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted.  U.S. v. Shaid, 937 F.2d 228, 231-231 (5th Cir. 1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992).  Even if a defendant raises a constitutional error, he may not raise an issue for the first time on collateral

review without showing both cause for his procedural default and actual prejudice resulting from the error.  U.S. v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995), and cases cited therein.

A claim may not be reviewed under 20 U.S.C. §2255 absent a showing of cause and prejudice or actual innocence.  U.S. v. Hicks, 945 F.2d 107, 108 (5th Cir. 1991).  Moreover, a prisoner who shows the possibility of prejudice may not obtain collateral relief under Section 2255 without demonstrating cause for his failure to raise the error at trial or on direct appeal.  U.S. v. Shaid, 937 F.2d at 229.

Cause is demonstrated by showing objective external factors which prevented the petitioner from having raised the instant claim previously, and actual prejudice resulting from the error.  The earlier proceeding may nonetheless be excused if the petitioner can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, i.e. the petitioner must make a colorable showing of actual innocence.  U.S. v. Flores, 981 F.2d 231, 235-236 (5th Cir. 1993).  Also, McCleskey v. Zant, 499 U.S. 467, 495, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1991).  Absent exceptional circumstances, establishment of ineffective assistance of counsel claim satisfies cause and prejudice as they are ordinarily brought for the first time on collateral review.  U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

<u>Ineffective Assistance of Counsel</u>

4

To establish that his legal representation at trial fell short of the assistance guarantee by the Sixth Amendment, a convicted defendant must meet the two pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 1052, 80 L.Ed.2d 674 (1984). He must show that his counsel's performance was deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e. that errors by counsel actually had an adverse effect on the defense). The former component of the test authorizes "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Anderson v. Collins, 18 F.3d 1208, 1215 (5ᵗʰ Cir. 1994), and cases cited therein. Also, U.S. v Segler, 37 F.3d 1131, 1136 (5ᵗʰ cir. 1994).

Williams raises several grounds attacking the effectiveness of his trial counsel: failure to investigate and call witnesses, failure to object, failure to impeach, failure to move for dismissal of a juror, failure to move for a mistrial and failure to

establish a justification defense.  Williams also attacks the performance of his appellate counsel for failure to appeal the alleged errors of the district court for failing to excuse a sleeping juror, failing question the jurors regarding their ability to hear, giving the Allen charge, excluding evidence in support of the justification defense and permitting double-counting when calculating the sentence.

### Trial Counsel

The record reveals trial counsel took seriously his appointment to defend Williams.  He appeared in court on numerous occasions, filed requests for discovery and various motions (including motions for in camera inspection of Officer Travis Bordelon's ("Bordelon") personnel record and for the discovery of Brady material), prepared for trial, cross-examined witnesses and presented evidence in support of Williams' justification defense.

### Failure to Investigate and Failure to Call Witnesses

Counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary.  Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 1052, 2066, 80 L.Ed.2d 674 (1984).  However, bare allegation of failure to investigate do not suffice.  A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it

6

would have altered the outcome of the trial.  <u>Nelson</u>, 989 F.2d at 850, citing <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir. 1989).

Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.  <u>Graves v. Cockrell</u>, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. denied, 549 U.S. 943, 127 S.Ct. 374, 166 L.Ed.2d 253 (2006), citing <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978). Also, <u>Boyd v. Estelle</u>, 662 F.2d 388, 390 (5th Cir. 1981).  Where the only evidence of a missing witness' testimony is from defendant, the Fifth Circuit Court of Appeals views claims of ineffective assistance of counsel with great caution.  <u>Sayre v. Anderson</u>, 238 F.3d 631, 636 (5th Cir. 2001), citing <u>Lockart v. McCotter</u>, 782 F.2d 1275, 1282 (5th Cir. 1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 530 (1987).  Unless petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to or how their testimony would have been relevant to his defense, claims of ineffective assistance of counsel fail for lack of prejudice. <u>Sayre</u>, 238 F.3d at 636.  Petitioner must also explain what counsel knew at the time of trial that should have caused him to call with witnesses.  "A prisoner's bald conclusory assertion that supposed

7

'alibi' witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" Id., citing, Marler v. Blackburn, 777 F.2d 1007, 1010 (5th Cir. 1985).

Williams argues that his trial counsel failed to interview three identified alibi witnesses, Lieutenant Taylor, Prison Guard Jowers and an undisclosed female staff member. Williams claims the alibi witnesses would have testified that he never swiped or pointed the shank at Bordelon; Lt. Taylor would have confirmed he reported Bordelon's inappropriate conduct and his fear of being targeted by Bordelon and other inmates to engage in homosexual activities; Officer Jowers would confirm he requested to be segregated to avoid contact with Bordelon; and, the female staff would confirm she recorded the conversation between he and Captain Jefferson regarding his repeated complaints about Bordelon which were continuously ignored and that portion of the video was deleted. However, Williams fails to include affidavits, letters or any similar evidence to support these statements. Therefore, Williams cannot prove he was prejudiced.

As these vague self serving statements do not rise to the level necessary to support a claim for ineffective assistance of counsel for failure to investigate or failure to call witnesses, these contentions are without merit and should be dismissed.

Failure to Object

Williams contends that his trial counsel failed to object several times throughout his trial. Williams points to counsel's failure to object to the "official duties" jury instruction, the Allen charge given and an alleged Brady violation.

### Jury instruction

Williams contends that his trial counsel should have objected to the "official duties" instruction given by the Court because a proper definition of official duties is contained in 18 U.S.C. §4042. The instruction that was given is the same jury charge provided for in Section 2.09 of the Fifth Circuit Pattern Jury Instructions (Criminal). Accordingly, there was no ground for the attorney to object to the charge.[1] This contention is without merit and should be dismissed.

### Allen Charge

Williams further contends that trial counsel failed to object to the Allen Charge given by the District Judge. "The term 'Allen charge' describes supplemental instructions to deadlocked juries 'urging them to forego differences and reach a unanimous verdict.' United States v. Heath, 970 F.2d 1397, 1406 (5th Cir. 1992). Modified Allen charges are permissible, within the district court's

---

[1] It is worth noting that the statute Williams contends should have been read as the instruction is the statute dealing with the duties of the Bureau of Prisons, not the duties of a BOP Officer and the instruction given by the Court encompasses the duties Williams asserts should have been given as supervising the custody of federal prisoners is part of providing for their care and safekeeping.

broad discretion, where 'the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial.' United States v. McClatchy, 249 F.3d 348, 359 (5ᵗʰ Cir. 2001) (internal citation omitted)." U.S. v. Allard, 464 F.3d 529, 535-536 (5ᵗʰ Cir. 2006).

In this case, the District Judge read the Modified "Allen" Charge as contained in the Fifth Circuit Pattern Jury Instructions (Criminal), §1.45.   Having been accepted by the Fifth Circuit, the content of the charge cannot be seen as prejudicial nor the instruction coercive.   Counsel for Williams knew this and acted properly in accepting the charge as read.   Furthermore, counsel acted properly in following along as the District Judge read the charge to ensure objections were not warranted.   Accordingly, this claim is without merit and should be dismissed.

Brady violation

Williams contends counsel failed to address destroyed video evidence of his conversation with Captain Jefferson following the assault on Bordelon.   In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-07, 10 L.Ed.2d 215 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754

(1995), citing <u>U.S. v. Bagley</u>, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).   In order to establish that evidence falls within the purview of <u>Brady</u>, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. <u>Williams v. Whitley</u>, 940 F.2d 132, 133 (5th Cir. 1991).

The determinative question is whether the evidence was material; that is, whether there is a reasonable probability that, had the report been disclosed to the defendant the result of the proceeding would have been different.  <u>Wilson</u>, 28 F.3d at 434, citing <u>Bagley</u>, 473 U.S. at 682, 105 S.Ct. at 3383.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Spence v. Johnson</u>, 80 F.3d 989, 994 (5th Cir. 1196), cert. den., 529 U.S. 1012, 117 S.Ct. 519 (1996), citing <u>Bagley</u>, 413 U.S. at 682, 105 S.Ct. at 3383.

Again, the burden of proof is on Williams to prove there was evidence which was suppressed, favorable to him and material. Williams acknowledges the Government provided the video taken by the unidentified female staffer.  He simply believes it was altered to exclude the conversation he had with Captain Jefferson.

Williams failed to provide any evidence that video of this conversation existed much less the video was altered.  Regardless of whether it existed or was erased, Williams cannot show that the evidence was material.  Williams contends the conversation is evidence that the assault was justified because he was repeatedly

harassed and despite continued reporting to prison officials, nothing was done to address the problem. However, counsel presented other evidence to support. Counsel questioned not only Williams but three other witnesses regarding Williams' encounters with Bordelon, his opposition to the sexual innuendos and gestures, the fact he reported the behaviors but no action was taken to address the problem and that he feared he would be targeted if he condoned the behavior. Accordingly, if the video existed, it would only be duplicative of the testimony already provided at trial and there is no indication that the outcome of the trial would have been any different. Consequently, this claim also lacks merit.

Failure to Impeach

Williams contends his attorney failed to impeach Bordelon with instances of prior misconduct and Edwards with respect to his testimony in comparison to the video evidence.

Bordelon

Counsel attempted to obtain Bordelon's personnel file in an effort to procure evidence of prior misconduct. Counsel filed several motions to have the file produced for an in camera inspection and the motion was granted. The undersigned conducted that inspection and determined that there was nothing in the file which was admissible, discoverable or which would lead to

admissible evidence in the case.[2]

At trial, counsel cross examined Bordelon and questioned him regarding almost every aspect of his testimony.  He questioned him regarding how the pat down was initiated, whether he knew about the metal in Williams' body, why he didn't allow Williams to speak to the Warden when the policy was for the prisoners to be able to report such conduct and what ramifications might exist in prison for condoning the inappropriate touching and/or what might be seen as homosexual conduct.  Counsel also questioned Bordelon, about the inconsistencies between his trial testimony, his written statement regarding the assault and the video evidence.  Further, when counsel thought the door had been opened to question Bordelon about prior misconduct, he re-urged his motion to do so.

There is no evidence counsel was deficient in cross examining Bordelon or impeaching him as a witness.  Thus, there is no merit to this contention.

Edwards

Williams further contends that counsel failed to impeach Edwards' testimony that he saw Williams swing the shank at Bordelon.  However, the trial transcript shows that counsel thoroughly questioned Edwards about both his written statement and his trial testimony and how they corresponded with the video

_____

[2] See Document Items 20 and 21 and Minute Entries dated September 7 and 13, 2006.

13

evidence.[3]

As counsel was not deficient in his duties with respect to impeaching witnesses, this aspect of the ineffective assistance of counsel claim is without merit.

<u>Failure to Move to Excuse Juror or Move for a Mistrial</u>

<u>Sleeping juror(s)</u>

Williams contends his trial counsel was ineffective because he failed to move to dismiss a sleeping juror or to have a mistrial declared based on the same.   Trial counsel properly brought the issue of a sleeping juror to the District Judge's attention on two separate occasions.

At the close of the first day, counsel questioned whether a female juror who he perceived to be sleeping might need to be excused along with the juror who could not hear.   The District Judge indicated that he watched the same juror and concluded she was not sleeping. (Tr. 115).   The following day, both the prosecutor and trial counsel brought to the Judge's attention that a juror was sleeping.   The Judge called the woman by name, had all the jurors stand up for a minute and reminded them the importance of paying close attention to all the witnesses.   (Tr. 178-179).

---

[3] Williams also asserts that counsel failed to impeach Edwards regarding whether or not the video in real time. Williams contends Edwards is not qualified to determine whether the video is or is not in real time.  Having watched the video evidence, it is obvious that it is not in real time. Accordingly, this contention is not only without merit but it is frivolous.

Trial counsel reacted to all instances of sleeping jurors and properly brought the matter before the court.  Williams fails to show that counsel's failure to move for the juror(s) to be excused or for a mistrial prejudiced his defense.  Accordingly, this claim is without merit and should be dismissed.

### Jurors who could not hear

Williams also contends his counsel was ineffective in that he failed to move for a mistrial when he learned that the jurors could not hear.  On the opening day of trial, a juror advised he could not hear.  The District Judge acknowledged this and asked the prosecutor to please speak up.  Several times that day, trial counsel stopped to ask the juror if he could hear.  Each time the juror indicated he could.  (Tr. 20, 25, 27, 56).  At the close of the day, that juror was asked to stay behind and the District Judge asked him how well he heard throughout the day.  He indicated he did not feel he heard everything, so the Judge, without objection of the prosecutor or counsel, excused the juror.  After he learned he was excused, the juror stated, "I just want to let you know that I'm not the only one that was complaining about not being able to hear everything."  Based on the juror's remark, trial counsel advised the Judge that he wanted the ask the jury the following day whether or not they could hear.  The Judge acknowledged the request but found such an inquiry was not necessary as no other juror indicated an inability to hear.  (Tr. 113-115).

Again, trial counsel properly responded to the statement by the excused juror.  Once the Judge made his decision, any further motion was futile and as acknowledged by Williams in his petition, was trial strategy aimed at not angering the court.  Accordingly, this claim should be dismissed.

Failure to Prepare for and Elicit Williams' Testimony

Williams believes his counsel did not properly prepare for his testimony nor did he elicit the proper information from him to establish a justification defense.  Counsel, in preparing for trial, sought evidence from various sources to support a justification defense.  He questioned three witnesses about their knowledge of the history between Bordelon and Williams and the interactions they witnessed.  He also questioned Williams regarding their encounters and his fears of being subjected to sexual abuse.

The information Williams contends should have been elicited, such as stories of bribery, retaliation and matters which may or may not have been contained in the non-discoverable personnel file, either do not exist or consist of hearsay and/or inadmissible evidence.  Williams even confirms that his counsel explained the same to him.  Accordingly, the decision not to elicit this testimony was sound trial strategy.

As counsel's performance was neither deficient nor prejudicial, all of Williams' claims for ineffective assistance of trial counsel should be dismissed.

16

## Appellate Counsel

"Counsel is not deficient for not raising every non-frivolous issue on appeal." Hughes v. Booker, 220 F.3d 346, 348 (5th Cir.2000); see also, Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998)("On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available."). Where an allegation of ineffective assistance of appellate counsel is based on failure to advance certain issues on appeal, courts have refused to find counsel ineffective when the proposed issues are without merit. Mendiola v. Estelle, 635 F.2d 487, 491 (5th Cir. 1981). Accordingly, to the extent Williams contends his counsel should have raised these claims in the context of an ineffective assistance of trial counsel claim, the undersigned finds that contention has no merit as none of Williams claims against his trial counsel have merit.

Williams asserts his appellate counsel should have raised issues on appeal because the District Judge failed to excuse a sleeping, voire dire and excuse non-hearing jurors, provided an Allen charge, excluded justification defense evidence and allowed impermissible double-counting.

### Jurors

It is within the trial court's discretion to determine whether a juror should be excused and this decision should not be disturbed absent a showing of abuse of that discretion. The test to

determine whether a petitioner was deprived of his Fifth Amendment right to due process or Sixth Amendment right to an impartial jury is whether or not he was prejudiced.

There is nothing in the record to indicate that Williams was denied a fair trial because one juror was seen sleeping and another juror (who was in fact excused) claimed he was not the only juror who could not hear.  As previously stated, one juror who claimed he had trouble hearing was questioned by the District Judge at the close of the first day as to how much trouble he had hearing.  The Judge concluded that the juror should be dismissed because he admitted he did not have a good grasp of what had transpired throughout the day.  As the juror was dismissed, he claimed the other jurors could not hear.  During the entire trial, this statement was the only evidence that the jurors could not hear.  No other juror indicated before, during or after that juror was dismissed that they too had trouble hearing.  The Judge was present to determine the context of the excused juror's statement.  That is, he was able to determine if the statement was sincere or made in an effort to save face.  Given the Judge's ability to gauge what was going on during trial, when he questioned they jury during voire dire and whether there was anything "behind" the excused juror's statement, the District Judge was in the best position to determine if the jury needed to be questioned regarding their ability to hear.

As there is no other evidence in the record that any other juror could not hear, the District Judge properly exercised his discretion in finding there was nothing to show the jury should be questioned and/or that a juror should be excused.

Additionally, there is nothing to indicate that the District Judge abused his discretion or that Williams was prejudiced by the decision not to excuse the sleeping juror.  Immediately upon being notified that a juror was sleeping, he called her name, had the entire jury stand up and stretch and then reminded them of the need to pay careful attention to all testimony.  No further complaints of jurors sleeping was brought to the Court's attention and none were pointed to by Williams in the petition currently before the Court.

Accordingly, there is no appealable issue and appellate counsel was not ineffective in refusing to address the issue at the appellate level.

### Allen charge

As previously stated, the content of the Modified "Allen" Charge cannot be seen as prejudicial nor the instruction coercive as it is a pattern instruction.  Accordingly, any issue raised by appellate counsel would have been frivolous.  Thus, this claim is without merit.

### Justification Defense Evidence

Williams contends the District Judge improperly excluded

proffered evidence in support of Williams' justification defense. The court did not abuse it discretion when ruling upon objections to questions asked by counsel in an effort to elicit evidence in support of a justification defense (Tr. 71,73). Nor did the court improperly rule that counsel was not allowed to go into evidence regarding prior misconduct as that evidence had been excluded and the door had not been opened by the prosecutor to allow for such follow-up. Accordingly, appellate counsel did not act inappropriately in failing to raise the issue on appeal. This claim is without merit and should be dismissed.

<u>Impermissible Double Counting</u>

Williams also claims appellate counsel should have raised the issue of impermissible double-counting when his sentence was calculated. While appellate counsel did not assert the argument made by Williams in the instant petition, she did assert arguments that the calculation of the sentence was erroneous. Specifically, she stated the four level enhancement for use of a dangerous weapon was improper as the video evidence did not show Williams swinging the shank at Bordelon and the six level enhancement was improper as there was no evidence he was motivated in committing the assault because Bordelon was a government employee. Both of these arguments were found meritless by the Fifth Circuit Court of Appeals and the undersigned finds Williams current contention also lacks merit.

20

The Fifth Circuit has expressly held that "the guidelines do not contain a general prohibition against double-counting." United States v. Calbat, 266 F.3d 358, 364 (5th Cir. 2001), citing United States v. Box, 50 F.3d 345, 359 (5th Cir. 1995). "Rather double-counting is prohibited only if it is specifically forbidden by the particular guideline at issue." Id.

Neither U.S.S.G. 2A2.2 nor 3A1.2 contain an express prohibition against the enhancement of the penalty. U.S.S.G. 2A2.2 provides the court shall apply the base offense level and the subsection (b)(2) enhancement when the case involves the use of a dangerous weapon with intent to cause bodily injury Williams. The Fifth Circuit has already reviewed the legal application of subsection (b)(2) enhancement and determined it was properly applied. Additionally, U.S.S.G. 3A1.2 provides that the only time this enhancement shall not be used is if offense guideline 2A2.4, Obstructing or Impeding Officers, is used and it was not in this case.

Neither of these enhancements prohibit the enhancement of the penalty. Therefore, there was no impermissible double-counting and appellate counsel was not deficient in failing to bring this frivolous claim.

In light of the foregoing, all of Williams' claims for ineffective assistance of appellate counsel should be denied.

## Government Errors

21

Williams claims the Government failed to produce evidence of "alleged prior [mis]conduct" by Bordelon. As Williams' own statement suggests, the conduct of which he complains amounts to nothing more than allegations of misconduct. Williams fails to point to any source who might have information regarding these instances of prior misconduct. The most logical source would be Bordelon's personnel file. However, the undersigned conducted an in camera review and according to the minute entry dated September 13, 2006, concluded there was nothing in the file which was admissible, discoverable or would lead to the discovery of admissible evidence. Therefore, it is logical to assume that there was no evidence of instances of prior misconduct or any other evidence favorable to the defense. Accordingly, the contention the Government acted improperly is without merit and should be dismissed.

## District Court Errors

As previously stated, the content of the Modified "Allen" Charge cannot be seen as prejudicial nor the instruction coercive as it is a pattern instruction. The District Judge did not err in determining that the sleeping juror should be excused nor that the jury should not be questioned regarding their ability to hear. There was no error on the part of the District Judge in failing to grant a mistrial and there is no prohibition for the enhanced penalty. Finally, the court did not err in ruling on objections to

questions regarding Williams' justification defense nor in determining the door had not been opened to question Bordelon about prior misconduct. Accordingly, William's claim that errors by the District Court deprived him of his constitutional rights is without merit and should be dismissed.

Conclusion

Accordingly, IT IS RECOMMENDED that Williams' motion to vacate, set aside or correct sentence (Doc. Item 65) be DENIED.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have *14* **days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. A party may respond to another party's objections within *14* **days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN** *14* **. BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

23

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of May 2010.

```
                                    _____
                                         JAMES D. KIRK
                                    UNITED STATES MAGISTRATE JUDGE
```

24